IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**TERESA DANIELS SMITH,**
    **Plaintiff,**

v.                                                                             No:   3:06cv420/RV/MD

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
    **Defendant.**

_____

**REPORT AND RECOMMENDATION**

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Teresa Smith's application for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

    Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and SSI benefits claiming an onset date of April 30, 2002. Her applications were denied initially and on reconsideration and she requested a hearing before an Administrative Law Judge (ALJ). A hearing was held on December 22, 2005 at which plaintiff was represented by counsel and testified. A vocational expert also testified. The ALJ rendered an unfavorable decision on April 26, 2006 (tr. 12-22) and the Appeals Council declined review (tr. 5-7), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had severe impairments of degenerative disc disease, osteoarthritis and carpal tunnel syndrome but that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4; that plaintiff had the residual functional capacity to perform light work activity and was capable of performing her past relevant work as a convenience store clerk; and that plaintiff was not disabled as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be

meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5.   Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

The medical record discloses that plaintiff has a lengthy history of complaints relative to her neck and shoulder. The earliest medical treatment appears to be a visit to Gulf Coast Physicians Practice in February 2002 when she was noted to have rotator cuff syndrome (tr. 311). She was treated conservatively with regular visits to that office until March 2003 when she was referred for MRIs of her cervical spine and right shoulder. The cervical spine MRI disclosed C5-6 spondylosis with mild central stenosis and moderate to severe right foraminal stenosis, and C4-5 right paracentral disc protrusion with associated hypertrophic uncinate spurring (tr. 120). The shoulder MRI disclosed an intact rotator cuff and biceps but a SLAP II lesion.[1] Based on these results, plaintiff was seen by an orthopedic surgeon, Gene Dabezies, M.D. At the initial visit, plaintiff complained of neck pain, right shoulder pain, right arm pain, numbness in the thumb and index finger as well as the fourth and fifth fingers but not the middle finger. She also complained of dropping things and feeling weak. X-rays of the cervical spine showed some mild degenerative changes

---

[1] A SLAP II lesion is a Superior Labrum Anterior to Posterior tear involving the biceps tendon and the labrum.

Case No: 3:06cv420/RV/MD

in the shoulder but were otherwise negative.  The two MRIs were reviewed and Dr. Dabezies' impression was that plaintiff's main limitation was her neck, which caused right radicular symptoms but that she also had some grinding with pain in her right shoulder with impingement.  Dr. Dabezies indicated that the primary problem was the cervical spine and that plaintiff would probably need surgery (tr. 129-130).  On May 6, 2003, plaintiff was seen by Kirby Turnage, M.D., also an orthopedic surgeon, for evaluation of her shoulder.  Dr. Turnage indicated that plaintiff had a SLAP lesion to her right shoulder and cervical disc disease.  He also noted that a nerve conduction study/EMG was pending.  He felt that she had an operative lesion on her right shoulder but that priority should be her cervical spine and that she should follow up with Dr. Dabezies after the nerve conduction studies.  The nerve conduction study was performed on May 7, 2003 and revealed evidence of mild carpal tunnel syndrome in the right wrist, a normal left wrist, and no evidence of cervical radiculopathy (tr. 122-124).  On April 15, 2003, a right shoulder arthrogram was performed and indicated an intact right rotator cuff and biceps with a SLAP II lesion (tr. 119).  Plaintiff returned to Dr. Dabezies on May 20, 2003.  Dr. Dabezies noted that the nerve conduction study was consistent with mild right carpal tunnel syndrome. He again noted the SLAP lesion but felt that plaintiff's difficulties related primarily to her neck and that she should be evaluated by a surgeon (tr. 126).  There is no indication in the record that this was ever done.

On September 3, 2003, plaintiff was involved in a motor vehicle accident in a parking lot.  X-rays taken the next day showed a normal lumbar spine, with slight straightening and minimal degenerative changes in the cervical spine (tr. 181-182).  During this time plaintiff was being treated conservatively by Gulf Coast Physicians Practice.  However, in March 2004 she began seeing a family practitioner, Richard Boyett, M.D.  On March 8, 2004, Dr. Boyett noted that plaintiff was depressed and taking Effexor and that seemed to be helping (tr. 341).  Plaintiff saw Dr. Boyett on

May 25, 2004 for an upper respiratory infection and on June 14, 1005 for a urinary tract infection (tr. 330, 333).  On August 4, Dr. Boyett noted that plaintiff was complaining of chronic back pain and he prescribed Neurontin (tr. 332).  Plaintiff was also seen by Cindy Behrens, M.D., who is in the same practice with Dr. Boyett.  Dr. Behrens treated plaintiff for miscellaneous sleep and sinus problems during December 2004 and through the end of June 2005 (tr. 378-393).  On September 14, 2005, plaintiff was seen by Jeff Buchalter, M.D., a pain management specialist.  Dr. Buchalter noted numerous complaints of pain in plaintiff's neck and back.  Neurological exam was grossly normal as was plaintiff's range of motion.  Dr. Buchalter assessed spondylosis, disc degeneration, radiculitis, displacement, and stenosis, all in the cervical spine, as well as myofascial pain and facet syndrome.  Dr. Buchalter recommended continuing conservative treatment, physical therapy, home exercises, aerobic conditioning and weight loss (tr. 395-399).

     Plaintiff was also examined by several consulting experts.  She was seen on September 22, 2003 by Richard Lucey, a family practitioner, whose findings were not particularly remarkable.  He did note that plaintiff complained of subjective discomfort with lateral rotation in her neck and he noted what had previously been confirmed as SLAP II lesion and C5-6 spondylosis.  He made no recommendations and imposed no limitations (tr. 136-139).  On September 23, 2003, plaintiff was examined by Richard E. Doll, Ph.D., a psychologist.  Dr. Doll's diagnosis was mood disorder secondary to physical problems.  He indicated that plaintiff had no serious deficiencies in concentration, persistence, understanding, memory, or social adaptation, and could follow simple one or two step instructions.  He felt that her major problems were physical in nature (Tr. 133-135).

     On September 14, 2005, plaintiff was examined by C.W. Koulisis, M.D., an orthopedic surgeon.  Dr. Koulisis reviewed plaintiff's entire medical history, consistent with the previous discussion.  Of significance in his examination of the

cervical spine was negative Spurling's Test, no palpable spasm, and normal motor strength.  He noted no shoulder problems.  Examination of the thoracolumbar spine was entirely normal.  His impression was cervical spondylosis and complaints of back pain with a right shoulder Type II SLAP lesion.  He noted that plaintiff complained of neck pain and pain radiating down her arms on both sides which was not in a dermatomal distribution, and that she was neurologically intact.  Plaintiff also complained of right shoulder pain but the examination of her shoulder was unremarkable (tr. 412-414).  Dr. Koulisis filled out a "Medical Source Statement of Ability to do Work-Related Activities (physical)."  He opined that plaintiff could lift and carry 20 pounds frequently and 25 pounds occasionally; that she had no restrictions in sitting, standing, or walking; that she should not push or pull more than 20 pounds; and that she should never climb, but could occasionally kneel, crouch, crawl or stoop.  He further felt that she was limited in reaching but not in gross or fine manipulation (tr. 418-421).

A September 24, 2005 MRI of the cervical spine disclosed spondylosis with curve reversal with some neuroforaminal encroachment and lesser canal encroachment at C-4-5 and 5-6 (tr. 409-410).  An MRI of the lumbar spine done the same day indicated limited spondylosis at L4-5, moderate at L5-S1 with mild to moderate disc dehydration and a bulging disc (tr. 411).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to give appropriate weight to her subjective complaints of pain, in failing to develop a full and fair record, and in failing to find that plaintiff's mental impairment was severe, and that plaintiff was disabled from her onset date as a matter of law.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that the plaintiff

was not disabled, in light of her physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

  1. <u>Plaintiff's subjective complaints of pain.</u>

  Plaintiff first contends that the ALJ did not give appropriate weight to her subjective complaints of pain. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. In *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the *Hand* test. *Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir. 2002); *Kelley v. Apfel,* 173 F.3d 814 (11th Cir. 1999); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Martin v. Railroad Retirement Bd.,* 935 F.2d 230, 233 (11th Cir. 1991).

  The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

Case No: 3:06cv420/RV/MD

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (citing *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987)). However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Id.*; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the Plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . . Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." *MacGregor v. Bowen*, 786 F.2d at 1054; *Holt v. Sullivan*, 921 F.2d at 1223. The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991).

Plaintiff argues that she has shown the required underlying condition, verified by positive findings on MRI, CT scan and x-ray. Plaintiff is correct that these tests results were objective findings of orthopedic problems, but it does not necessarily follow that they must be read to support a finding of disabled. Plaintiff is also correct that her testimony at the hearing before the ALJ, if credited, would require a finding of disability. However, the ALJ did not find plaintiff's testimony to be fully credible, holding that "the objectively demonstrable evidence of record fails to support that the claimant is as impaired as she has alleged." (Tr. 19). In support of this factual finding, the ALJ noted that (1) no treating or consulting physician had opined that plaintiff was disabled because of any physical or mental condition, (2) plaintiff had surgical repair of her rotator cuff but x-rays showed no acute bony abnormalities and only mild AC arthrosis, (3) Dr. Buchalter found near full range of

motion in plaintiff's back and extremities, (4) Dr. Buchalter recommended nothing more than physical therapy with heat and ultrasound, home exercise, and weight loss, and (5) Dr. Koulisis' examination was essentially normal.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[2] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it (the evidence of such belief here is scant), but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

---

[2] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

The ALJ's stated reasons for discounting plaintiff's subjective complaints of pain were supported by the administrative record, and plaintiff is not entitled to reversal on this ground.

2.      **Development of the record.**

Plaintiff next contends that the ALJ failed to develop the record sufficiently. She says that the ALJ should have ordered a consultative examination to explore the extent and effect of her sleep apnea. The Social Security disability benefits process is inquisitorial rather than adversarial, *Sims v. Apfel*, 530 U.S. 103, 110-111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000), *Crawford & Company v. Apfel,* 235 F.3d 1298 (11th Cir. 2000), and is informal.  *Richardson v. Perales,* 402 U.S. 389, 400-401, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971); *Kendrick v. Shalala*, 998 F.2d 455, 456 (7th Cir. 1993); 20 C.F.R. § 404.900(b).  With informality comes a duty to develop a complete record as is done by European magistrates.  *Kendrick,* 998 F.2d at 456.  It is well established in this Circuit that the ALJ has an affirmative duty to develop a full and fair record.  *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990); *Smith v. Bowen*, 792 F.2d 1547, 1551 (11th Cir. 1986); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  The duty to develop the record exists even though the plaintiff is represented by a lawyer or paralegal. *Brown*, 44 F.3d at 934 (citing *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir.Unit B July 1981)); *Smith*, 792 F.2d at 1551 (citing *Cowart*, 662 F.2d at 735).  This duty requires that the ALJ "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited,"  *Cowart*, 662 F.2d at 735 (citations omitted), and "investigate the facts and develop the arguments both for and against granting benefits."  *Crawford & Company, supra*, 235 F.3d at 1304.

That does not mean, however, that the ALJ must search to the last document to find every possible piece of relevant evidence.  Rather, he must have sufficient

evidence to decide the case.  The seminal cases in this circuit on the ALJ's duty to develop the record are *Ford v. Secretary of Health and Human Services*, 659 F.2d 66 (5th Cir. Unit B Oct. 15, 1981) and *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984). Both held that it is not necessary for the ALJ to order a consultative examination unless the record established that such an examination was necessary to enable the ALJ to make a decision.  Where he has sufficient information to decide the case, however, he can do so. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that where the record is complete and adequate to a decision, no showing of prejudice is made).

Moreover, "[t]he claimant has the burden of proving he [or she] is disabled, and is therefore responsible for producing evidence in support of the claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. § 416.912(a), (c).  Here, the evidence of sleep apnea was scant, and its effect even more so.  On August 4, 2004 Dr. Boyett noted that plaintiff had seen a Dr. Phillips in consultation for sleep apnea and that a sleep study had been recommended (tr. 322).  There is no report of a sleep study in the record.  On April 28, 2005 plaintiff apparently filled out a questionnaire concerning sleep habits and an unidentified physician noted "sleep disturbance - refer to pulmonary med."  (Tr. 384-385).  On September 19, 2005 Dr. Buchalter noted possible sleep apnea but did not include the condition in his assessment (tr. 396, 399).  Finally, there is an undated entry in Dr. Behrens' records noting sleep apnea under "medical problems."  (Tr. 380).  In her testimony before the ALJ, plaintiff stated that she was *going* to be tested for sleep apnea, but if she was, she did not provide any results for inclusion in the record.  The ALJ's decision was not rendered until a full four months after the hearing, and no results were presented to the Appeals Council for consideration before the Appeals Council's decision of August 2, 2006.  No treating or examining physician commented on plaintiff's condition other than to note it and, in one case, recommend testing.  There was sufficient

evidence in the record for the ALJ to discount sleep apnea as a severe condition, and plaintiff is not entitled to reversal on this issue.

3.  **Severity of mental impairment.**

Finally, plaintiff says that the ALJ erred in not finding her depression to be severe. At step two the ALJ must determine whether the claimant has a severe impairment. 20 C.F.R. § 1520(c). The burden at this step is on the claimant. *Chester v. Bowen, supra.* The Commissioner's regulations provide:

> **What we mean by an impairment(s) that is not severe.**
>
> **(a) Non-severe impairment(s).** An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
> **(b) Basic work activities.** When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include--
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations;  and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521. The Commissioner has adopted an interpretive ruling that specifically addresses how to determine whether medical impairments are severe. The ruling provides in part:

> As explained in 20 C.F.R. §§ 404.1520, 404.1521, 416.920(c), and 416.921, at the second step of sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any SGA [substantial gainful activity]. An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of

slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Thus, even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA.

SSR 85-28, 1985 WL 56856.

In *Brady v. Heckler,* 724 F.2d. 914 (11th Cir. 1984) the Eleventh Circuit used the test later adopted in SSR 85-28 to state that a claimant's abnormalities must be of such kind that they would not be expected to interfere with the individual's ability to work. The Eleventh Circuit has further explained that

> [s]tep two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

*McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986). It is not for the reviewing court to say that under these circumstances plaintiff's impairment is or is not trivial, only that the ALJ must properly justify his finding on that issue. And the ALJ's findings must be supported by substantial evidence.

Here the ALJ specifically found that plaintiff's depression was not severe (tr. 14-15). He noted that State Agency psychiatrists determined that plaintiff had no severe mental impairment based on their review of the record (tr. 14-15, 148-60, 360-72). Dr. Doll noted a depressed mood, but observed no deterioration in grooming, good long-term memory or recall of critical details, average appearing intelligence, no signs of hallucinations or perceptual disturbances, and adequate concentration, persistence, and pace (tr. 17, 133-134). Dr. Doll also noted that plaintiff was

*Case No: 3:06cv420/RV/MD*

cooperative, outgoing, had good eye contact throughout the interview, and that her major problems were physical in nature (tr. 17, 134-135). Plaintiff acknowledged a full range of activities including driving, shopping, cooking, and performing household chores (tr. 15, 134). Dr. Lucey noted that plaintiff was alert, pleasant, cooperative, well-groomed, and without overt mood or thought disturbances (tr. 18, 138). Dr. Boyett noted that plaintiff was somewhat better with Effexor, that other people had noticed the difference, and that plaintiff's mood was normal and her affect was appropriate (tr. 341). Plaintiff also testified at the hearing that she was not receiving any treatment for depression other than taking the Effexor prescribed by her doctor (Tr. 465).

The mere presence of a mental disturbance can not be deemed severe absent a showing of severe functional loss establishing an inability to engage in substantial gainful activity. *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). Plaintiff has not shown that she had any significant limitations due to depression or any other mental impairment. Plaintiff's medication was effective according to her doctors. Therefore, the ALJ did not err in finding that plaintiff's depression was not severe, and she is not entitled to reversal on this ground.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 31st day of May, 2007.

/s/ *Miles Davis*
    MILES DAVIS
    UNITED STATES MAGISTRATE JUDGE

Case No: 3:06cv420/RV/MD

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts***, 858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 3:06cv420/RV/MD*